UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARREN WILLIAMS | CIVIL ACTION |
| VERSUS | NO. 08-4446 |
| SHERIFF GUSMAN, ORLEANS PARISH PRISON | SECTION "R"(3) |

## REPORT AND RECOMMENDATION

Before the Court are the Motion for Summary Judgment (Rec. Doc. No. 8) filed by the plaintiff, Darren Williams, and the Cross-Motion for Summary Judgment (Rec. Doc. No. 25) filed by the defendant, Orleans Parish Criminal Sheriff Marlin Gusman. The motions, along with the entire case, were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Upon review of the entire record, the Court has determined that the motions can be disposed of without a hearing.

## I.  Factual Summary

The plaintiff, Darren Williams, is currently housed in the Orleans Parish Prison ("OPP").[1] Williams filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against

---

[1]Rec. Doc. No. 33.

Orleans Parish Criminal Sheriff Marlin Gusman seeking monetary damages and other relief for the alleged denial of adequate medical care for his diabetes.[2]

Williams alleges that he was diagnosed as a diabetic in 2005 while housed in the United States Penitentiary at Coleman, Florida ("USP-Coleman") . He further claims that he has been unlawfully detained since his arrest on July 17, 2007. He further claims that he should be receiving insulin twice daily but he has not received any medication from OPP medical personnel since his arrest. He seeks changes in the OPP medical department and $50 million.

## II. Pending Motions

Shortly after the filing of the complaint, Williams filed a motion for summary judgment arguing therein, as supplemented by his later pleadings, that his prison medical and grievance records show that he was an insulin dependant diabetic and that he was not receiving the necessary medication from OPP in spite of his repeated requests for medication.[3] He also indicates that he received insulin treatment at other prisons prior to his July 17, 2007, arrest. He also alleges that he received insulin treatments in late 2008 while he was temporarily housed in another facility and now, as a result, he is being provided insulin care at OPP. He claims that the record documents, including the medical records, show that he should always have received treatment for diabetes. Williams submitted copies of his grievance complaints to OPP officials.

In addition to the medical issues, Williams also seeks summary judgment on the issue of his alleged unlawful incarceration arising from his false arrest on July 17, 2007.[4] In support of that

---

[2]Rec. Doc. No. 1.

[3]Rec. Doc. Nos. 8, 13, 16, 29, 34.

[4]Rec. Doc. No. 13, p. 10; Rec. Doc. No. 16, p.10.

claim, he alleges that he is being held without probable cause and he was not read his <u>Miranda</u> warnings. He also alleges that his criminal proceedings are unconstitutional because he is being denied his right to a speedy trial, to due process, and to effective assistance of counsel.

Pursuant to the Court's order, Sheriff Gusman filed a Cross-Motion for Summary Judgment alleging that he is entitled to judgment as a matter of law because the plaintiff failed to state a claim for denial of medical care. Gusman also alleges that the OPP medical records show that Williams received adequate medical care for his injured jaw, which the Court notes is not at issue here.[5] The motion does not specifically address Williams' claims of inadequate medical care for his diabetes, nor does it address Williams' claims arising from his criminal proceeding.

Williams requested that the Court review his prison medical records in support of his motion. The Court is in receipt of Williams' medical records from the Orleans Parish Prison and the East Louisiana Mental Health Hospital, which also includes his records from Dixon Correctional Institute ("DCI") in Jackson, Louisiana, and USP-Coleman.[6]

The records demonstrate that, on December 15, 2005, Williams was indicated to be an insulin dependent diabetic on the medical transfer form from USP-Coleman.[7] In the Health Appraisal and Treatment Plan issued upon his transfer from that facility on January 24, 2006, he was on insulin for diabetes mellitus, type II.

---

[5] Rec. Doc. No. 25.

[6] These records have been separately filed under seal. Rec. Doc. Nos. 37, 38.

[7] Rec. Doc. No. 38, ELMHS Medical Records (sealed), USP Medical Transfer, 12/15/05.

Upon his evaluation at Elayn Hunt Correctional Center ("Hunt") on January 29, 2006, in St. Gabriel, Louisiana, his medical record summary also indicated a diagnosis of diabetes mellitus, type II, and a prescription for Novolin and human insulin.[8]

At DCI, on January 30, 2006, he was still reported as having diabetes mellitus, type II, and was prescribed Novolin with a referral to the diabetic clinic.[9] He was placed on a diabetic diet and daily Accucheck monitoring.[10] On March 9, 2006, he was seen by a physician and placed on regular insulin on a sliding scale.[11] The Accucheck monitoring records reflect that Williams was only given insulin as needed based on his blood glucose level.

By July 18, 2007, Williams was apparently housed in OPP on his current charges. At that time, based on his self-history, he was placed on Accucheck monitoring daily for five days and referred to doctor's sick call for evaluation.[12] At the periodic history and physical examinations, and his occasional intake screenings, taken between July 2007, and December 2008, Williams continually reported himself as having diabetes.[13]

---

[8]Id., Hunt Medical Record Summary, 1/29/06.

[9]Id., DCI Physician's Note, 1/30/06; DCI Intra-Institutional Health Screening, 1/30/06.

[10]Id., DCI Diet Slip, 2/2/06, 8/20/06; DCI Accucheck Monitoring 1/30/06-2/22/06, 2/22/06-3/18/06, 3/19-27/06.

[11]Id., DCI Physician Progress Notes, 3/9/06; DCI Physician Note, 3/9/06, 3/31/06.

[12]Rec. Doc. No. 25-2, Exhibits, p. 75, Physician Orders, 7/18/07; Rec. Doc. No. 37, OPP Medical Records (sealed), Medical Intake Screening, 7/17/07.

[13]Rec. Doc. No. 25-2, Exhibits, pp. 36-44, Medical H&P Exam, 7/31/07; p. 51, Medical Intake Screening, 11/1/07; pp. 45-50, Medical H&P Exam, 12/4/07; pp. 52-54, Medical Intake Screening, 1/14/08; pp. 10-15, 27-32, Medical H&P Exam, 8/7/08; pp. 1-3, Medical Intake Screening, 12/19/08;

On August 4, 2007, a physician ordered Accucheck for 30 days, which Williams received.[14] He was evaluated by a physician on September 10, 2007.[15] The doctor found that the Accucheck readings were always within normal limits and that there was no evidence of diabetes mellitus.[16] The doctor ordered that the Accucheck be discontinued and advised Williams to request glucose checks in six months.[17] Williams instead requested a blood sugar check in a sick call request submitted October 23, 2007.[18] The nurse's findings indicate that his blood sugar was within normal limits at 88 when checked on October 19, 2007. She also noted that he already had a scheduled doctor visit.

Williams was seen by a physician on November 5, 2007. His blood sugar at that time was within normal limits at 133 without medication. To rule out diabetes, the doctor ordered daily Accucheck for 10 days, which he received.[19]

Williams was seen by a physician on January 14, 2008, and again reported himself as having diabetes mellitus, type II.[20] The doctor's notes indicate that Williams' blood sugar was within normal limits at 90. The doctor wrote "no DM - malingering."[21] There are no other medical reports

---

[14] Id., p. 74, Physician Orders, 8/4/07; p. 89, Medication Administration Record, 8/31/07-9/10/07; p. 91, Medication Adminsitration Record, 8/8-31/07.

[15] Id., p. 78, Physician Notes, 9/10/07.

[16] Id., p. 78, Physician Notes, 9/10/07.

[17] Id., pp. 73, Physician Orders, 9/10/07; p. 78, Physician Notes, 9/10/07.

[18] Id., p. 55, Sick Call Request, 10/23/07.

[19] Id., p. 68, Physician Notes, 11/5/07; p. 69, Physician Orders, 11/5/07; p. 86, Medication Administration Record, November 2007.

[20] Id., p. 59, Physician Notes, 1/14/08.

[21] Id., p. 59, Physician Notes, 1/14/08; p. 60, Physician Orders, 1/14/08.

related to complaints of diabetes in the records submitted. After that medical entry on January 14, 2008, the record contains three inmate grievance forms, two dated February 11, 2008, and one dated February 18, 2008, in which Williams asked for diabetes medication.[22] The responses attached thereto, each from a medical clerk, deny relief because the medical findings did not support his claim of diabetes or the need for treatment. Williams' OPP records contain no other sick call requests for medical care for diabetes and no other grievances were filed related to diabetes.

Thereafter, the next medical report is that dated December 8, 2008, from ELMHS. Based on Williams' self-declared history as a diabetic, Accucheck monitoring was ordered for seven days without medication.[23] On December 13, 2008, he was placed on regular insulin and Accucheck was continued.[24]

On December 15, 2008, Williams reported to the nurse's station with a headache. His blood sugar was 311 and he was given six units of regular insulin.[25] The doctor also increased his daily glucophage prescription dose with a diagnosis of type II diabetes mellitus.[26] In the hospital's discharge summary, Williams was diagnosed, in part, with type II diabetes mellitus with a discharge medication plan of glucophage 500 by mouth twice a day with daily Accucheck before morning

---

[22]Rec. Doc. No. 37, OPP Medical Records (sealed), Inmate Grievance Form, No. 594389, 2/11/08; Inmate Grievance Form, No. 594576, 2/11/08; Inmate Grievance Form, No. 594390, 2/18/08.

[23]Rec. Doc. No. 38, ELMHS Medical Records (sealed), Medical History and Physical, 12/8/08; Nursing Assesment, 12/8/08; Doctor's Admit Order Sheet, 12/8/08; Nursing 72 Hour Review, 12/10/08.

[24]Id., Doctor Order Sheet, 12/13/08; Medication Chart, 12/13-14/08.

[25]Id., Progress Notes, 12/15/08; Doctor's Order Sheet, 12/15/08; Medication Chart, 12/15/08.

[26]Id., Doctor's Order Sheet, 12/15/08; Medication Chart, 12/15/08; Diabetic Records, 12/8/08-1/9/09; Discharge Progress Notes, 1/9/09.

6

medication and at night, with regular insulin on a sliding scale as needed.[27] According to Williams, upon his return to OPP from ELMHS on January 14, 2009, he began receiving insulin and treatment for his diabetes.[28]

These records demonstrate that Williams was monitored for diabetes at OPP from July 17, 2007, until a physician at OPP determined he was malingering on January 14, 2008, because his blood sugar levels were consistently within normal limits. After that date, Williams made no sick call requests for care. Eventually, when he complained to medical personnel at ELMHS, he was monitored and placed on medication as necessary.

The Court will address the cross-motions for summary judgment and conduct its statutory review for frivolousness as is necessary.

## III. Standards of Review

### A. Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Fields v. City of Southern Houston, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. See Andersen v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. Id., at 248.

---

[27] Id., Discharge Summary, 1/22/09.

[28] Rec. Doc. No. 34.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." Hopper v. Frank, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Id.

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." Celotex Corp., 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. See Szabo v. Errisson, 68 F.3d 940, 942 (5th Cir. 1995); Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994).

### B. Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e) and § 1915A, and with specific reference to prison conditions, 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. See Cay v. Estelle, 789 F.2d 318 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993).

However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these provisions, a claim is frivolous only when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319 (1989); Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. Harper v. Showers, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Neitzke, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); see Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992).

**IV.   Analysis**

Sheriff Gusman is the only named defendant in Williams' complaint. Williams has alleged claims of inadequate medical care by medical personnel at OPP and claims arising out of his allegedly unlawful criminal proceedings against him, claims which will be addressed later in this opinion. He seeks summary judgment on both of these issues. However, Williams has not indicated the basis of Sheriff Gusman's liability with respect to either of these claims as set forth below.

Sheriff Gusman, on the other hand, seeks summary judgment dismissing only the inadequate medical care claims against him because Williams has failed to allege that the sheriff was personally

9

involved in his medical care or was otherwise liable under § 1983 for his medical care. As noted above, this is the only claim addressed by the Sheriff's motion.

### A. Inadequate Medical Care Claims Against Sheriff Gusman

Under the standards for review of a summary judgment set forth above, the movants must demonstrate the absence of a genuine issue of material fact to be entitled to summary judgment. Myles v. Lynaugh, 56 F.3d 1385, 1995 WL 337728 at *2 (5th Cir. 1995) (Table, Text in Westlaw). If this burden is met, the burden shifts to the opposing party to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. (citations omitted). In this case, neither Williams nor Sheriff Gusman have provided a statement of uncontested facts or provided any other competent summary judgment evidence to support their motions. The Court only has before it the medical records and grievance records already filed into the record with which to determine whether Gusman is entitled to summary judgment on the medical care issue.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 102-03 (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Regardless of whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.

Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996).

In Hare, the United States Fifth Circuit Court of Appeals held that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs and that a jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to the inmate but responded with deliberate indifference to that risk. Hare, 74 F.3d at 641-42, 646. The phrase "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). This same standard applies to claims of inadequate jail conditions, including inadequate medical care. See Hare, 74 F.3d at 650.

Specific to this case, inadequate medical care by prison personnel or a doctor can result in a violation of the Eighth Amendment for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to the prisoner's serious medical needs which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999). In Estelle, the United States Supreme Court concluded that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Id., 429 U.S. at 97 (citation omitted, footnotes omitted). Thus, to state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," Bienvenu v. Beauregard Parish Police Jury, 705 F.2d 1457, 1460 (5th Cir. 1983), and that the prison official knew of and disregarded "an excessive risk to inmate health or safety," Stewart, 174 F.3d at 533 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

However, proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under §1983. A state actor may be liable under §1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345 (5th Cir. 1981); see also Watson v. Interstate Fire & Casualty Co., 611 F.2d 120 (5th Cir. 1980). Therefore, §1983 does not provide for a supervisory official, like Sheriff Gusman, to be held vicariously liable or liable under a theory of respondeat superior simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. See Alton v. Texas A&M University, 168 F.3d 196, 200 (5th Cir. 1999); see also Baskin v. Parker, 602 F.2d 1205, 1220 (5th Cir. 1979).

In this case, Williams has not alleged that Sheriff Gusman was personally involved in the acts about which he complains. A review of Williams's complaint, the motion, and his prison medical records, fails to disclose any indication that Gusman was directly involved in Williams' medical care at OPP. Williams, under a broad reading, instead suggests that undisclosed OPP medical personnel failed to provide him with the care he believed was appropriate. Sheriff Gusman

12

cannot be held vicariously liable under § 1983 for the acts of an employee or subordinate, whether it be a deputy or doctor, who allegedly violated the plaintiff's constitutional rights.

Even if another such defendant were named, the medical records also do not support Williams allegations that he was denied medical attention for diabetes by OPP personnel after July 17, 2007. Williams also does not allege in his pleadings that he has suffered detrimentally from the lapse of medication during that period when it was not deemed medically necessary by the prison physicians. He did not file any sick call requests after the January 14, 2008, doctor visit. Thus, there were no requests for medical personnel at OPP to ignore. Even his grievance complaints filed in February 2008 were addressed with instructions for him to file sick call requests if necessary. He did not. There is no showing of an intentional indifference to his medical condition.

More importantly, Williams has made no showing that Sheriff Gusman, the only named defendant, was personally and deliberately indifferent to his medical needs. He can not maintain a claim against Sheriff Gusman under § 1983 arising from the alleged denial of adequate medical care. Williams's claims must fail as a matter of law. Williams' Motion for Summary Judgment (Rec. Doc. No. 8) should be denied on this issue, Sheriff Gusman's Cross Motion for Summary Judgment (Rec. Doc. No. 25) should be granted, and the inadequate medical care claims against Sheriff Gusman dismissed.

**B.     Claims Against Sheriff Gusman Arising from Williams' Criminal Proceedings**

Williams also seeks summary judgment on the remaining issue of his alleged false arrest and other alleged constitutional deficiencies in his pending criminal proceeding.[29] As discussed above, the only named defendant in this case is Sheriff Gusman. Williams, however, has not indicated that

---

[29]Rec. Doc. No. 13, p. 10, 16, p.10.

13

Sheriff Gusman was involved in either his actual arrest or any facet of his criminal proceeding. That is to say that Williams does not in any way allege that Sheriff Gusman personally arrested him or is personally prosecuting him or representing him as counsel.

Although Sheriff Gusman is Williams' custodian, Williams also is not entitled to relief as a matter of law on his alleged unlawful imprisonment resulting from the alleged false arrest. The United States Supreme Court has made clear that because "false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges." Wallace v. Kato, 549 U.S. 384, 390 (2007). At that point, any alleged false imprisonment "forms a part of the damages" for a distinct malicious prosecution claim, which does not accrue until the prosecution is terminated in some way in favor of the accused. Wallace, at 390; Heck v. Humphrey, 512 U.S. 477, 484 (1994).

The same is true for a claim of false arrest which, as here, led to the alleged false imprisonment. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." Id., at 390 (citations omitted). Federal law governs the accrual of a claim under § 1983. Id., at 388. Thus, on such a claim, the statute of limitations begins to run under federal law from the date the legal process is initiated against the arrestee. Id., at 390. In such a case, the time for the filing of Williams' claims of false imprisonment or false arrest against Sheriff Gusman have expired.

Because there is no federal statute of limitations for § 1983 claims, the district court looks to the forum state's statute of limitations for personal injury claims. Wallace, 549 U.S. at 387; Bd. of Regents of Univ. of New York v. Tomanio, 446 U.S. 478, 483 (1980) (citing 42 U.S.C. § 1988);

Wilson v. Garcia, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998) (citing Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[30] See Jacobsen, 133 F.3d at 319 (citing Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)).

Williams alleges that he was arrested on July 17, 2007. Williams represents that, as a result of that arrest, he entered a plea of guilty to misdemeanor theft on August 9, 2007.[31] He later appeared before a state magistrate judge on August 14, 2007, and was arraigned on the charge of burglary for which he remains incarcerated pending trial.[32] Based on Williams' exhibits and affording him every benefit, the criminal process began no later than August 14, 2007.

Applying the state prescriptive period, Williams had one year from that date, or until August 14, 2008, to timely file his § 1983 petition for false imprisonment and false arrest against a proper defendant. The record in this case reflects that William's complaint was filed by the clerk of court on September 25, 2008, when pauper status was granted. In the *pro se* prisoner context, however, the date when prison officials receive the complaint for delivery to the court is considered the time of filing for limitations purposes. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995); see also Thompson v. Raspberry, 993 F.2d 513, 515 (5th Cir. 1993) (pro se prisoner's objection to a report and recommendation deemed filed when given to prison officials for mailing). In this case,

---

[30]Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

[31]Rec. Doc. No. 7, pp. 40.

[32]Id.

15

Williams dated his signature on the handwritten complaint and cover letter on August 18, 2008. This is the earliest date on which he could have delivered it to prison officials for mailing. This was more than one-year after his claims accrued on, or no later than, August 14, 2007.

Therefore, Williams' claims of false imprisonment because of his alleged false arrest are not timely filed. As such, Williams is not entitled to judgment as a matter of law on these claims. He also is not entitled to summary judgment on the remaining facets of his claim of unconstitutional criminal proceedings for failure to establish any personal involvement on the part of Sheriff Gusman. Williams motion for summary judgment must be denied as to these claims.

However, having found that Williams' claims against Sheriff Foti are, for the reasons set forth above, without legal basis or otherwise have prescribed, the Court will recommend that they be dismissed as frivolous pursuant to its statutory authority under the standards set forth above. See Gatrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993) (limitations may be raised by the Court to dismiss a claim as frivolous).

## V.     Recommendation

It is therefore **RECOMMENDED** that the **Motion for Summary Judgment (Rec. Doc. No. 7)** filed by Williams be **DENIED**.

It is further **RECOMMENDED** that the **Cross Motion for Summary Judgment (Rec. Doc. No. 25)** filed by Sheriff Gusman be **GRANTED** and the inadequate medical care claims against him **DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that Williams' claims of false imprisonment, false arrest, and unconstitutional criminal proceedings, be **DISMISSED WITH PREJUDICE** as frivolous, pursuant to 28 U.S.C. § 1915(e) and § 1915A.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 24th day of March, 2009.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**